# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM JOHN PRZYWARA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-16-185-SPS |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant William John Przywara requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 3, 1959, and was fifty-four years old at the time of the administrative hearing (Tr. 63, 156). He completed two years of college, and has worked as a landscaper (Tr. 64-65, 179). The claimant alleges he has been unable to work since November 1, 2012, due to a left foot injury, nerve damage, left toe edema, left foot stress fracture, and problems with his left ankle (Tr. 178).

## Procedural History

On November 30, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 156-59). His application was denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 22, 2014 (Tr. 44-54). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except he could occasionally climb ramps and stairs, kneel, and use foot controls with his left foot; frequently balance, stoop, crouch,

and handle, finger, and feel with his right dominant arm; never crawl or climb ladders, ropes and scaffolds; should avoid exposure to hazards such as dangerous machinery and unprotected heights; must avoid exposure to temperature extremes; and must be allowed to alternate sitting and standing approximately every thirty minutes for a brief postural change lasting no longer than three or four minutes at a time (Tr. 47). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, mail clerk, routing clerk, and collator operator (Tr. 52-53).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate the opinions of treating physicians Dr. Lisa Mogelnicki and Dr. Larry Lewis. The Court agrees and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant's hypertension, neuropathy of the left foot, history of tenosynovitis of the left foot, mild degenerative joint disease of the knees, and mild peripheral artery disease of the lower extremities were severe impairments (Tr. 46). The relevant medical evidence reveals that the claimant was diagnosed with a left foot contusion and stress fracture of the proximal phalangeal base in his second toe in December 2011 (Tr. 270, 352). The claimant established care with Dr. Emory Hilton, a podiatrist, on January 11, 2012 (Tr. 270-71). At this initial appointment, Dr. Hilton noted trace swelling and discoloration over the claimant's second metatarsal phalangeal joint, guarded digital range of motion, and mild hammering of the lesser digits (Tr. 270). She

subsequently treated the claimant with pain medication, a bone stimulator, a walking boot, crutches, and a below-knee cast, none of which were effective (Tr. 255-78). On February 10, 2012, the claimant presented to Dr. Patrick Gannon, an orthopedist, who noted mild swelling in his forefoot and dysesthesias with light touch, but did not see any surgical pathology (Tr. 341).

The claimant established care with Dr. Lisa Mogelnicki, a podiatrist, on February 22, 2012 (Tr. 337-38). Between February 2012 and November 2012, Dr. Mogelnicki treated the claimant with medications, a surgical shoe and toe splint, a walking boot, and several injections (Tr. 293-338). The claimant sporadically reported improvement in his pain, but his overall improvement was minimal (Tr. 293-338). On July 17, 2013, Dr. Mogelnicki completed a Medical Source Statement ("MSS") wherein she opined that the claimant could not continuously stand for at least six to eight hours due to pain, but could sit upright for at least six to eight hours, could walk four city blocks without stopping, and did not need to lie down during the day (Tr. 461). Additionally, Dr. Mogelnicki found the claimant could constantly reach above shoulder level, at waist level, and below waist level; could constantly handle, finger, and feel; but she was unsure about the claimant's ability to lift, carry, grasp, pull, push, or do fine manipulations with his hands (Tr. 461-62). Dr. Mogelnicki further indicated that the claimant had difficulty squatting due to a neuroma on his foot, and was "limited in weight bearing." (Tr. 462). She stated that the claimant's pain was a nerve-related issue, and that the treatments she recommended either did not work, or were refused by the claimant (Tr. 460).

The claimant sought treatment for foot pain from his primary care provider, Dr. Larry Lewis, on two occasions (Tr. 330-31, 335-36). On March 6, 2012, Dr. Lewis noted the claimant's left foot was tender to palpation and discolored (Tr. 335). On July 26, 2013, and January 1, 2014, Dr. Lewis completed an MSS wherein he opined that the claimant could not return to his past work because he was "not able to lift significant weight," and that it was "difficult" for the claimant to work due to persistent pain (Tr. 468, 471). Specifically, Dr. Lewis found that the claimant could stand for twenty-to-thirty minutes at a time on his left leg due to foot pain, could sit upright for at least six to eight hours, could walk one city block without stopping, could frequently lift/carry less than five pounds, and needed to lie down during the day "at times [sic] forty minute weight bear." (Tr. 466-67, 471). Additionally, he found that the claimant had no limitation in his ability to reach, handle, finger, and feel, but did have problems grasping, pulling, pushing, or doing fine manipulations with his hands because he "may have tremors of [sic] hands." (Tr. 467, 471). Dr. Lewis also noted that it was painful for the claimant to kneel and squat, and was "limited weight bearing." (Tr. 467). Dr. Lewis did not elaborate on the claimant's weight bearing limitations in his July 2013 MSS, but specified that he was "limited weight bearing – 10 minutes" in his January 2014 MSS (Tr. 467, 471).

Dr. William Grubb performed a consultative examination of the claimant on February 18, 2013 (Tr. 365-72). Dr. Grubb found that the claimant had minimal ability to dorsiflex his left second toe, reduced strength in his left second toe with dorsiflexion, and full range of motion in his ankles (Tr. 367-68). He observed "wasting of soft tissue"

on the claimant's left first toe, but no other evidence of trauma, wasting, or tenderness in the claimant's left foot (Tr. 367). Dr. Grubb diagnosed the claimant with left foot neuropathy with pain and weakness with dorsiflexion, hypertension, prior diagnosis of possible left foot tenosynovitis and possible stress fracture, and history of recurrent nerve block injections for left foot discomfort (Tr. 367).

The claimant presented to Dr. Stacy Brown for an orthopedic surgery consultation on April 2, 2013 (Tr. 376-78). Dr. Brown noted reduced motor function in the claimant's second and third toes, but full range of motion in his toes and ankles (Tr. 378). An x-ray of the claimant's left foot taken the same day revealed minimal degenerative changes, and an x-ray of the claimant's left ankle was unremarkable (Tr. 393-94). Dr. Brown diagnosed the claimant with neuropathy and neuralgia to the left foot, and referred him for an electromyography, the results of which were normal (Tr. 378, 440).

On May 29, 2013, and August 5, 2013, state reviewing physicians determined that the claimant's impairments were non-severe (Tr. 89-107).

At the administrative hearing, the claimant testified that he first injured his foot at boot camp in 1978, and then reinjured it in October 2011 by tripping over a log (Tr. 67-68). He further testified that the most significant limitations which prevent him from working were chronic pain and difficulty walking, standing, and sitting (Tr. 67). He described his pain as feeling "like a pitchfork sticking up in the bottom of my foot" and "like it's in a bear trap." (Tr. 71). The claimant further stated that he experienced pain constantly, and rated his pain (with medication) at eight on a ten-point scale (Tr. 72). The claimant testified that his current treatment of pain management was helpful (Tr. 72).

As to specific limitations, the claimant stated he could walk one hundred feet, stand for fifteen minutes, sit for twenty minutes, and lift/carry no more than five pounds (Tr. 73).

In his written opinion, the ALJ summarized the claimant's testimony and the medical evidence. The ALJ assigned very little weight to the opinions of Dr. Mogelnicki and Dr. Lewis, and rejected the State Agency physicians' opinion that the claimant had no severe impairments (Tr. 51-52). He summarized Dr. Grubb's consultative exam findings, but did not assign them any specific weight (Tr. 49). In support of his conclusions regarding Dr. Mogelnicki and Dr. Lewis, the ALJ stated that their opinions were "not supported by the evidence of record." (Tr. 51). The ALJ also suggested that Dr. Mogelnicki and Dr. Lewis may have been sympathetic towards the claimant, and that they may have prepared their opinions in order to avoid tension with him (Tr. 51).

The medical opinions of treating physicians such as Dr. Mogelnicki and Dr. Lewis are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship, (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v.*

*Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). Here, the ALJ summarized the opinions of Dr. Mogelnicki and Dr. Lewis, but provided no analysis at all in relation to the pertinent factors. Additionally, the ALJ rejected both opinions partly because they were inconsistent with the medical record as a whole. This would have been a legitimate reason for rejecting their opinions if the ALJ had specified the inconsistencies to which he was referring. *See, e.g., Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted]. Lastly, it was error for the ALJ to reject their opinions upon speculation that they sympathized with the claimant "for one reason or another." (Tr. 51). *See, e. g., Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected [the treating physician's] opinion based upon his own speculative conclusion that the report . . . was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for . . . these findings. Nothing in [the treating physician's] reports

indicates . . . that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*'"), *quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [emphasis in original].

Because the ALJ failed to properly evaluate the opinions of treating physicians Dr. Mogelnicki and Dr. Lewis, the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 15th day of September, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**